Dykman, J.
In 1884 the assessors of Newburgh valued the property of the West Shore Railway in that city at $489,275. The company sued out a writ of certiorari, and reviewed the action of the assessors at the special term. The proceedings of the assessors were affirmed, and the company now appeals from the order dismissing the writ.
Into the foreground of the argument is put the inability of the railway company to earn its running expenses, its insolvency, and a valuation of $20,000,000 for the whole 425 miles of road,' based on its selling value in the open market.
From this the argument is urged that the part of the railway in Newburgh should be assessed for taxation as part of the whole, and ratably with the value of the entire route.
There is no process by which the assessors of Newburgh, in 1884, could have fixed the value of the West Shore Railway. It was the moot question of the day in railroad circles, and many of the best informed students of the questions were convinced it had no value save for a sale to its more powerful rival, whose inducement to purchase could only come from the desire to end the relentless cutting of rates. It was thought to be only a question of time and price, but no one could do more than guess at either. We think, therefore, that the situation of the relator’s company made it impracticable tor the Newburgh assessors to consider the value of the whole route, or value the two miles in that city ratably with the whole.
The assessors could assess the property only with reference to its intrinsic value.
The first cost of the right of way through Newburgh was $513,122.57 and a million of dollars were spent in improvements. The assessors valued the completed route at $386,775. Very conclusive evidence of eiror should be presented, to authorize a reversal of a valuation which seems very liberal to the relator. The experts vary, and do not convince us they are right.
The freight yard is assessed at $100,000. Twenty years ago it was bought for $100,000, and $15,000 was expended in improvements. The Mutual Life Insurance Company loaned $100,000 on mortgage on the property but had to foreclose, and, at the sale, the price was $98,500. The purchaser at the foreclosure sale sold to the West Shore Company at $110,000, which we assume to be a very full price at that time; but a very large part of the property was then under water, and has since been filled in and made fast land, and available for commercial uses. We feel confident we are far within the limits of fact, in saying the value was increased more than half by this process. _ One of the witnesses for the relator valued the yard at $150,000, while Mr. Bigler placed it at $300,000; McCroskery at $250,000; Mr. Gibb at $400,000. We are well satisfied the assessors have dealt fairly in valuing the freight yard at $100,000.
We are not as well satisfied with the valuation of the three acres called gravel bank at $3,500, but the evidence of error is not strong enough to lead us to substitute our judgment for the assessors’ and the special term, both of which have intimate personal knowledge of the property.
The order dismissing the writ should be affirmed, with costs.